H. E. Kelley v. Commissioner.
H. Kelley v. Commissioner
Docket No. 11812.
United States Tax Court
1947 Tax Ct. Memo LEXIS 217; 6 T.C.M. (CCH) 475; T.C.M. (RIA) 47117; May 6, 1947
*217 Morris Kanfer, Esq., 520 Woodward Bldg., Washington, D.C., for the petitioner. Elmer L. Corbin, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1941 in the amount of $30,771.80. The validity for tax purposes of a family partnership is the question presented. Petitioner's return was filed with the collector of internal revenue at Richmond, Virginia. Findings of Fact Petitioner is an individual residing in New Church, Virginia. He was about 54 years old in 1941. Since 1917 petitioner has been in the business of raising vegetables and canning them for sale. Petitioner's first wife died in 1918. Of this union was born a daughter, Margaret, who was 26 years old in 1941, married and living in New Jersey. Petitioner married his second and present wife, Reva, in 1920. Reva had two children by petitioner, a daughter Hortense, who was 21 years old in 1941, and a son, Horace Edward, Jr., who was 17 in 1941. Petitioner owns approximately 1,200 acres of farm land. He raises various vegetable crops, including tomatoes, beans, peas and potatoes. In conjunction *218 with these farms, petitioner owns a canning plant. The busy season is from June to October, inclusive. At the height of this season from 250 to 300 employees are hired, of which 100 to 150 work in the cannery. The business reported a net income of $83,542.86 for 1941. Before their marriage petitioner and Reva discussed petitioner's business. Petitioner orally agreed to share his property with Reva and Reva orally agreed that she would help petitioner in the business. Reva, since becoming petitioner's wife, has helped him with the business. In general she manages the office, which involves bookkeeping, preparing payrolls, drawing and depositing checks, billing out shipments, handling correspondence and telephone calls. Reva draws all the checks for the business, signing them "H. E. Kelley, by R. P. Kelley." In 1935 petitioner broke a vertebra in an automobile accident and was substantially incapacitated for almost two years. In 1937 petitioner had a nervous breakdown. He was again virtually incapacitated for two years. Durink these periods of petitioner's incapacity, Reva ran the business. Petitioner continued to give what advice he could on policy matters but was unable to actively *219 participate to any extent. By 1941 petitioner was somewhat improved and took a more active part in the business. Salesmen and representatives who had business dealings with the Kelleys customarily dealt with petitioner or Reva, depending on which one was available. Such persons, as well as the various superintendents, accepted Reva as an authoritative head of the business, particularly during petitioner's various periods of indisposition. Horace Edward, Jr., hereinafter referred to as H. E. Jr., as a youngster grew up in the atmosphere of his father's and mother's farming and canning activities. Increasingly as he grew older he undertook various small chores around the place and ran errands for his parents. From the age of 10 or 12 onward, he was sufficiently developed and familiar with the general operation of the business to be of appreciable assistance. He helped as he could after school and during vacations. During the periods of his father's illnesses, H. E. Jr. informally supervised the pickers and other farm help, worked on the trucks, assisted around the office preparing payrolls and paying off the employees and acted as general handyman. He could drive a tractor and occasionally *220 made truck trips to Philadelphia for cans. He lived at home and attended school until June, 1942. From June, 1942, until February, 1943, he stayed at home and helped with the business while waiting to be called into active military service. He entered service in February, 1943, and continued in service until December, 1945. He was an A.A.F. pilot. At the time of the hearing he was attending the University of Virginia, studying business administration. Hortense lived at home during the summer and helped her mother in the business at various times. She ran errands, made trips to the bank to make deposits or obtain cash and assisted in preparing payrolls. Margaret customarily visited her parents for six weeks during the busy season. She helped in various ways in the office and in the cannery, checking buckets, supervising peelers and so on. Prior to 1941 the business was run as petitioner's sole proprietorship. None of his family shared in the profits or received compensation for their services. During 1940 petitioner discussed with his wife the question of bringing the children into the business. Petitioner wanted to stimulate the children's, particularly the son's, interest in *221 the business so it would continue as a family enterprise after his death. Petitioner discussed the question with a neighboring canner named Taylor, who had incorporated his business at one time and later converted it into a partnership form. Taylor recommended the partnership form and suggested that petitioner confer with one Edmundson, who was Taylor's and petitioner's accountant. Edmundson furnished a partnership agreement for petitioner. No lawyer was consulted. The partnership agreement was signed by petitioner, his wife and children on December 31, 1940. The agreement was for a term of one year commencing January 1, 1941, and renewable by the mutual consent of the parties from year to year. Capital contributions of the parties were stated to be: petitioner, $84,000; and the wife and three children, $4,000 each. Actually nothing was contributed except the assets of petitioner's sole proprietorship. Petitioner was designated a general partner and his wife and children were designated limited partners. Each partner was to share in the profits to the extent of 20 per cent. The limited partners were liable for losses only to the extent of their stated capital contribution plus any *222 accumulated undrawn profits. It was further provided that: 8. The General Partner shall be permitted to draw from the funds of the partnership, for his services as directing manager of the business, a reasonable salary not to exceed Fifteen Thousand ($15,000.00) Dollars for the year to end December 31, 1941, and each year thereafter so long as this agreement shall remain in effect. The Special or Limited partners shall each be permitted to draw from the funds of the partnership, for services rendered, such salary or compensation as may be determined by the General partner. All salaries or compensation paid to General and Special partners shall be charged as expenses of the business before a determination of the profits for the fiscal period is made. 9. The said H. E. Kelley, General partner, shall give whatsoever of his time and attention as is necessary to manage or to direct the affairs of the business. The said R. P. Kelley, H. E. Kelley, Jr., Hortense Kelley and Margaret K. Perry shall not be required to give any of their time and attention to the business, but nothing herein contained shall prevent the General partner from hiring any one or all of the said Special or Limited *223 partners as an employee or employees. None of the Special or Limited partners, however, shall have any voice in the management or direction of the said business unless specifically authorized in writing by the General partner. 10. Any amounts other than salary or other compensation paid to or for the account of the said General and Special or Limited partners, either monthly, quarterly, semi-annually or annually, shall be charged to them and at the annual audit or accounting the sum or sums so paid shall be charged against their respective shares in the profits. It is mutually agreed by and between all partners that such withdrawals by or for the account of the Special or Limited partners shall not exceed the sum of Twelve Hundred ($1200.00) Dollars each in any one year, except by the consent of the General partner, until the working capital of the business (meaning the excess of current assets over current liabilities [sic] shall have reached the sum of One Hundred Fifty Thousand ($150,000.00) Dollars, which sum shall be left in the business as permanent working capital. If the respective shares in the profits shall not be equal to the sum or sums so withdrawn, each shall repay *224 to the partnership any deficiency. * * *
16. It is further mutually agreed by and between all partners that the General partner shall have the exclusive right to acquire or purchase at any time the entire interest or interests of any or all the Special or Limited partners at book value. Book value, it is understood, means the amount of the original capital contribution, any accumulated undrawn profits to the close of the next preceding fiscal period, plus any accrued salary for personal services rendered, and minus any withdrawals to date the said interest or interests were acquired or purchased from the Special or Limited partner or partners. The business was conducted essentially in the same manner in 1941 as it had been earlier. A partnership return was filed for 1941 showing the net income of the business as $83,542.86, of which the following amounts were reported as the partners' shares: petitioner, $25,596.14; Reva, $18,236.68, and the three children, $13,236.68, each. The amounts by which petitioner's and his wife's shares exceed the children's shares represent salary. Nothing was withdrawn by or distributed to the children during 1941. Petitioner did not report as *225 his individual income the amounts reported on the partnership return as the distributive shares of his wife and children. Respondent, in his deficiency determination, included in petitioner's individual income the amount of $78,542.86, representing the difference between $83,542.86, the net income from the business, and $5,000, representing Reva's salary. Opinion The question is to what extent, if at all, the family partnership here involved is valid for income tax purposes. After carefully considering the entire record we have concluded that the partnership is valid as to the petitioner, Reva and H. E. Jr., but is not valid for income tax purposes as to the two daughters. The record is abundantly clear concerning the very substantial and vital services contributed by Reva to the business. In a nontechnical sense Reva had been a very real partner in the business from the beginning. H. E. Jr.'s services were not so vital or substantial as his mother's, but they were none-theless of considerable importance and value and touched a phase of the business his mother's talents would have been unsuited to handle. Petitioner was getting on in years and having had a difficult time healthwise *226 quite naturally was anxious to encourage his son in taking a more active interest in the business. Looking to the future, H. E. Jr. was the logical one to carry on the business established by his father. It was also logical to recognize and reward his wife's ability and contribution. Considering all these circumstances and based on the entire record, we are convinced that petitioner, Reva and H. E. Jr. in executing the agreement dated December 31, 1940, really and truly intended to carry on business together as partners and, in fact, did so during 1941. The fact that H. E. Jr. was in school during the winter of 1941 was no serious obstacle in his participation in the business, as it was a seasonal one, reaching its most active peak in the summer. Nor does H. E. Jr.'s situation with respect to military service affect our conclusion. We hold that Reva and H. E. Jr. were valid partners in the business during 1941 and as such were each entitled to 20 per cent of the income therefrom. Walter J. Runyon, 8 T.C. 350. It follows that respondent erred in attributing such income to petitioner. We have been unable to satisfy ourselves that the daughters were valid partners. The *227 nature and extent of their services are not convincingly or clearly portrayed in the record. We are not satisfied either that petitioner was much concerned about their interest or future participation in the business. We have concluded after carefully weighing all the evidence in this connection that there was no real intent to carry on the business with the daughters and we so hold. The daughters' purported shares of the business income are, in our opinion, attributable to petitioner, who, under the written agreement, so closely controlled them and from whom originated the capital aiding their creation. We therefore hold that respondent correctly attributed to petitioner for tax purposes the alleged shares of the daughters in the income of the business. Decision will be entered under Rule 50.